YELLOW CAB CO. OF SACRA-
MENTO, a California Cor-
poration, Plaintiff,

v.

YELLOW CAB CO. OF ELK GROVE,
INC., a California Corporation; and
Michael P. Steiner, an individual, De-
fendants.

No. CIV. S–02–0704FCDDAD.

United States District Court,
E.D. California.

May 29, 2003.

**1200**

Sharon L. McWilliams, Hunter Richey DiBenedetto and Eisenbeis, Sacramento, CA, for Plaintiff.

Jeffrey S. Kravitz, Attorney at Law, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiff Yellow Cab Company of Sacramento brings this action against Yellow Cab Company of Elk Grove and Michael P. Steiner alleging claims for relief for violations of the Lanham Act, common law trademark infringement and unfair competition, statutory unfair competition, false advertising, and intentional interference with prospective business advantage. This matter is before the court on plaintiff's and defendants' separate motions for summary judgment.[1] For the reasons set forth below, plaintiff's motion is DENIED and defendants' motion is GRANTED.

## BACKGROUND [2]

Plaintiff alleges that in approximately 1922, a company known as the "Yellow Cab Company" began operating yellow and black taxicabs in the Sacramento area. In 1952, that company was purchased by Union Taxi Corporation. At that time, the Union Taxi Corporation fleet was composed of Yellow Cab taxis as well as Union and Oak Park taxis. Over the next 20 years, Union Taxi Corporation purchased a number of other taxi companies and converted most of its fleet to display the name "Yellow Cab Co." on its vehicles. In 1972, the official name of Union Taxi Corporation was changed to Yellow Cab Co. of Sacramento. The present owners of Yellow Cab Co. of Sacramento—Frederick Pleines, Jr. and Kenneth Pleines—have held an interest in the company since 1952.

Currently, plaintiff Yellow Cab Co. of Sacramento operates approximately 90 cabs in the "greater Sacramento area," which plaintiff defines as Sacramento County, including Elk Grove, West Sacramento in Yolo County, and Roseville in Placer County. Plaintiff's accounts number approximately 700, including the Red Lion Hotel, Doubletree Hotel, Radisson Hotel, Holiday Inn Capitol Plaza, Marriott Hotel Rancho Cordova, and Southern Pacific Depot. Plaintiff alleges that it was the first and the only company to use the name "Yellow Cab" in Elk Grove and the greater Sacramento area throughout the years, until defendant[3] began his operation.

In September 2001, defendant began providing a taxi cab service under the name "Yellow Cab Co. of Elk Grove, Inc." in Elk Grove and the Sacramento area. Defendant Michael P. Steiner is the sole owner and operator of Yellow Cab Co. of Elk Grove, which consists of only one taxicab. Defendant Steiner has a valid license issued by the County of Sacramento to operate taxicabs under the name "Yellow Cab of Elk Grove" in the City of Elk Grove and the County of Sacramento. Defendant displays the name "Yellow Cab Co. of Elk Grove" on his cab, which is painted yellow and black. Defendant al-

---

1. While plaintiff seeks summary judgment in the form of a determination of liability and injunctive relief on its first four claims for relief, defendants seek summary judgment on all five of plaintiff's claims, as well as an award of attorney's fees.

2. Plaintiff and defendants have submitted two sets of undisputed facts and oppositions thereto in support of their respective motions for summary judgment. Because the court adjudicates both motions together in the present

order, the facts as recited herein are taken both from plaintiff's response to defendants' statement of undisputed facts and defendants' response to plaintiff's statement of undisputed facts.

3. Because Michael P. Steiner is the sole owner and operator of the one-cab operation known as Yellow Cab Company of Elk Grove, the court will refer to Yellow Cab Company of Elk Grove and Michael P. Steiner collectively as "defendant" herein.

leges that numerous companies in the "Sacramento region," which defendant defines to include such locales as Marysville, Chico, Kings Beach, and Nevada City, have used the name "yellow cab" over the years.

Plaintiff and defendant compete directly for the same clientele, and both place listings and advertisements of their services in telephone directories. Plaintiff alleges that these listings, which are in close proximity to one another in telephone directories, have resulted in misdirected calls by directory assistance operators. Defendant disputes this contention, arguing that phone operators, when presented with a request for "yellow cab," typically ask what city, and then dispense the phone number for the appropriate yellow cab company in that city. As additional evidence of confusion between the two taxicab operations, plaintiff cites an example where one customer believed the two companies to be affiliated after the customer had a verbal altercation with defendant Steiner in a parking lot.

In January, 2002, plaintiff sent a letter to defendant asking him to cease using the name "Yellow Cab Company of Elk Grove." Defendant admittedly was aware that plaintiff had been operating "Yellow Cab Co. of Sacramento" prior to adopting the name "Yellow Cab Company of Elk Grove," and did not consult with plaintiff prior to adoption of that name. Also in January, 2002, defendant's application to the California Secretary of State to register the mark "Yellow Cab Company of Elk Grove" was rejected on the following basis: "The words 'yellow cab' are generic and widely used. You cannot claim ownership of those words, and geographical locations are not registrable." Defendant continues to operate his business under the name "Yellow Cab Company of Elk Grove" to date.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the moving party does not bear the burden of proof at trial, it may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987) (citing *Matsushita Elec. In-*

dus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The evidence presented by the parties must be admissible. Fed. R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 57 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## ANALYSIS

### A. Trademark Infringement

The central issue of this lawsuit concerns a claim of trademark infringement by plaintiff involving its unregistered trade name. Plaintiff claims the exclusive right to use the names "Yellow Cab," "Yellow Cab Co.," and any likeness thereto within the geographic area of greater Sacramento. Defendant asserts that the term is generic with respect to cab companies, and thus is not entitled to trademark protection. Plaintiff, however, asserts that the term is arbitrary, and thus entitled to trademark protection as an "inherently distinctive" mark.

■ In order to establish a claim for trademark infringement under both federal and state law, a plaintiff must prove that it owns rights in a valid and protectable trademark and that its rights have been or are being infringed by the actions of defendant. *See Brookfield Comm. Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1046–47 (9th Cir.1999). In a case involving a mark that is properly registered, that mark is presumed valid, and the burden of proving genericness rests on the defendant. *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1146 (9th Cir.1999). However, in a case such as this, where a supposedly valid mark is not federally registered, the plaintiff bears the burden of proving nongenericness after the defendant asserts genericness as a defense. *Id.* Thus, plaintiff Yellow Cab Co. of Sacramento bears the burden of proving that the terms "Yellow Cab" and "Yellow Cab Co." are not generic.

■ Marks typically fall into one of the following categories, in increasing order of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). The latter three categories are deemed inherently distinctive marks and are entitled to trademark protection, "because their intrinsic nature serves to identify a particular source of a product." *Id.* While descriptive marks are not considered inherently distinctive, they may acquire distinctiveness if they have developed a "secondary meaning," and may thereby become entitled to protection. *Id.* at 768–69, 112 S.Ct. 2753. Finally, generic marks, which are those terms that refer, or have come to be understood as referring "to the genus of which the particular product or service is a species," cannot become trademarks deserving of protection "under any circumstances." *Filipino Yellow Pages*, 198 F.3d at 1147.

The Ninth Circuit has stated that "[i]n determining whether a term is generic, we have often relied upon the 'who-are-you/ what-are-you' test: 'A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the [generic] name of the product answers the question 'What are you?' " *Id.* The court has further explained that "[i]f the primary significance of the trademark is to describe the *type of product* rather than the *producer*, the trademark [is] a generic term and [cannot be] a valid trademark." *Id.* (emphases in original). Courts have sometimes referred to generic

terms as "common descriptive" names. *Id.*

The terms "yellow" and "cab" are, indisputably, generic when standing alone. However, the question the court must answer is whether these two generic words, when coupled, acquire such a meaning as to take the collective term "yellow cab" out of the "generic" category. *See id.* at 1148. In support of its position that the term "yellow cab" is generic, defendant submits numerous news articles, advertisements, telephone listings, and government records, as well as the expert witness report of Dr. Patrick Farrell, an associate professor of linguistics at the University of California at Davis.[4]

The news articles indicate the use of the term "yellow cab" as a synonym for "taxicab" by members of the journalistic community. For example, one *Wall Street Journal* article discussing the travails of arriving at airports in a timely manner stated the following:

> [W]e decided to travel to Newark airport and back by five different methods to see how it stacks up. We took an Olympia Express bus; a van called SuperShuttle that offers door-to-door pickup; and a deluxe Carey Limousine, the type favored by celebrities and CEOs. Of course, we also hailed a yellow cab.

(Declarations of Jeffrey S. Kravitz and Michael Steiner and Exhibits 1–31 in Support of Defendant's Motion for Summary Judgment ("Kravitz/Steiner Decl."), filed Apr. 18, 2003, at Ex. 9.) The advertisements and telephone listings also indicate that there appear to be hundreds, if not thousands of taxi services nationwide that include the term "yellow cab" in their company names. Records from the United States Patent and Trademark Office's Trademark Electronic Search System indicate that a number of such companies include disclaimers indicating that the company makes no claim to the exclusive right to use "yellow cab" apart from the specific service mark as shown. (Ex. 14 to Kravitz/Steiner Decl.) On a more local geographical level, a 1978 survey conducted in cooperation with the State of California found four competing companies with the term "yellow cab" in their company name in the greater Sacramento region, within the 916 area code. (Ex. 11 to Kravitz/Steiner Decl., at 26–31.) Plaintiff itself acknowledges that it is aware of competing yellow cab companies in the surrounding communities of Woodland, Marysville, and Vacaville. (Ex. 2 to Kravitz/Steiner Decl., at 6–7.)

Finally, Dr. Farrell's report includes an extensive analysis of the history and use of the term "yellow cab" in this country. Dr. Farrell's review of numerous web sites and Internet searches reveal that the term "yellow cab" is frequently used in a generic sense as a synonym for "taxicab." According to Dr. Farrell, "yellow cab" is listed as a synonym for "taxicab" in *Roget's Thesaurus of English Words and Phrases.* (Ex. 1 to Kravitz/Steiner Decl., at 13.) Further, "yellow cab" is frequently

---

**4.** Plaintiff spends a significant portion of its brief arguing that defendant's evidence—including Dr. Farrell's report and numerous news articles—is not admissible and should not be considered by the court in adjudicating the pending motions for summary judgment. However, the court notes that such evidence, though it may be deemed hearsay, is commonly considered by courts in precisely this setting, where it is necessary to determine how the term at issue is understood by the consuming public. *See Filipino Yellow Pages,* 198 F.3d at 1148 (discussing *Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.,* 601 F.2d 1011 (9th Cir.1979)). In addition, Dr. Farrell's supplemental declaration, filed May 16, 2003, eliminates any objections to his report on the basis that it does not appear in the form of a declaration or affidavit signed under oath. Accordingly, plaintiff's objections to defendant's evidence are overruled.

written in lowercase letters and pluralized, indicating its use as a reference to a type of vehicle. Finally, as is evidenced by the other exhibits offered by defendants, Dr. Farrell also finds that the taxicab industry itself treats the phrase generically by using the term widely in the business names of thousands of companies across the country.

In opposition to defendant's motion for summary judgment, plaintiff merely submits the same evidence it used to support its own motion for summary judgment. That evidence, *in toto*, consists of the following: (1) A declaration by Frederick Pleines, Sr., the father of the current owners of Yellow Cab Co. of Sacramento, outlining his experience working in the taxicab industry in the Sacramento area, including his affiliation with various incarnations of "Yellow Cab Co." in the area; (2) A declaration by Robert Riesenman, the aforementioned individual who confused plaintiff's and defendant's companies, detailing his experience with defendant Steiner; (3) A declaration by plaintiff's attorney, attaching two exhibits consisting of copies of select pages from a treatise on trademark law, and a copy of defendant's responses to plaintiff's interrogatories; and lastly (4) A declaration of Frederick Pleines, Jr., one of the current owners of Yellow Cab Co. of Sacramento, attaching an exhibit consisting of copies of excerpts from telephone directories including advertisements by Yellow Cab Co. of Sacramento since 1922.

■ As the Ninth Circuit stated in *Filipino Yellow Pages*, "[i]t does not appear that [plaintiff] has offered evidence of nongenericness sufficient to rebut even the fairly modest evidence of genericness offered by [defendant]." 198 F.3d at 1151. Plaintiff alleges an exclusive right to the names "Yellow Cab," "Yellow Cab Co.," and any likeness thereto in the greater Sacramento area. Accordingly, the court

must consider these terms under the "who-are-you/what-are-you" test employed by the Ninth Circuit. When posed with the question "What are you?", the term "yellow cab" ineluctably leads to "a taxicab," according to the evidence submitted by defendant. Just as grape-leaf designs have become generic emblems for wine by passing through common usage to identify a product, so has the term "yellow cab" become a generic reference to "taxicab." *See Kendall–Jackson Winery, Limited v. E. & J. Gallo Winery,* 150 F.3d 1042, 1048–49 (9th Cir.1998). In the context of the wine industry, "because wine bottlers other than Kendall–Jackson have long used grape leaves to decorate their labels, that emblem has become generic." *Id.* at 1049 (stating that "[b]ecause the grape leaf is used widely in the industry, it has lost the power to differentiate brands"). Similarly, in the context of the taxicab industry, because taxi services other than plaintiff's have long used the term "yellow cab" to describe their services, that term has become generic.

Moreover, in terms of the sufficiency of plaintiff's evidence, the court notes that the declarations submitted by Frederick Pleines, Sr. and Jr. are from a "partial source," and thus possess very limited probative value. *Id.* at 1152. Plaintiff's attorney's declaration further contains only defendant's interrogatory responses which do not aid the court in determining whether the term "yellow cab" is generic in the eyes of the consuming public or the relevant industry. Finally, the declaration of a single individual who confused plaintiff's and defendant's companies is wholly insufficient to carry plaintiff's burden in this instance. The court is left with the advertisements attached to the Pleines, Jr. declaration, which are equally unhelpful in determining whether the term "yellow cab" is generic; they merely indicate that plaintiff's company has been in existence

for some time and has been advertised in the area.[5] Accordingly, the court finds that the term "yellow cab" is generic, and is thus not entitled to trademark protection.[6]

■ Alternatively, even assuming "yellow cab" is not generic, but is instead descriptive, plaintiff fails to come forward with evidence to prove the necessary element of "secondary meaning" and thus be entitled to trademark protection.

Secondary meaning can be established in many ways,

> including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant.

*Filipino Yellow Pages*, 198 F.3d at 1151. In this case, plaintiff has offered the declaration of only one consumer, declarations of two partial sources, and evidence of advertisements in telephone books since 1922. As stated above, partial source evidence has very limited probative value. Even taking the remaining evidence in the light most favorable to plaintiff, there is no genuine issue of material fact remaining for trial as to whether "yellow cab" has acquired a secondary meaning to the buying public in the Sacramento area. *See Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 873–75 (9th Cir.2002) (finding that two incorrectly addressed letters, six declarations from business owners in the area, and advertising evidence is "not enough to establish a 'mental recognition in buyers' and potential buyers' minds' between [plaintiff's] trade name and a single source," nor is it enough to establish secondary meaning). As the court stated in *Surgicenters of America v. Medical Dental Surgeries*, "[t]here is no [ ] consumer testimony in this case to indicate that a significant portion of the consuming public associate "Surgicenter" with [plaintiff's] service." 601 F.2d 1011, 1018 n. 23 (9th Cir.1979). Plaintiff has simply failed to offer evidence that the taxi service-consuming public in the Sacramento area associates "yellow cab" with a single source, much less plaintiff's company in particular. *Id.* at 875.

Because the court finds that "yellow cab" is a generic term, or, in the alternative, is a descriptive term and that plaintiff fails to prove secondary meaning, the court need not reach plaintiff's argument that

---

5. Plaintiff and defendant disagree over the effect of the court's decision in *Yellow Cab Company of Charlottesville v. Rocha*, 2000 WL 1130621 (W.D.Va. July 5, 2000).. The court first notes that the *Rocha* case is an unreported Western District of Virginia opinion, and is thus entitled to little weight. In addition, the *Rocha* court was confronted with the issue of whether to grant plaintiff's motion for preliminary injunction, and thus engaged in very little, if any, analysis of the issue of genericness. In fact, in finding that the plaintiff did not present a substantial likelihood on the merits of its claim, the court specifically indicated that it "expresse[d] no views on the merits of the issue[ ] of whether "yellow cab" is generic." *Id.* at *8.

6. In its reply to defendant's opposition to plaintiff's motion for summary judgment,

plaintiff for the first time cites *Louisville Taxicab & Transfer Co. v. Yellow Cab Transit Co.*, 53 F.Supp. 272 (W.D.Ky.1943), in support of the argument that "persuasive jurisprudence that is directly on point demonstrates that plaintiff's name is not generic." However, in *Louisville Taxicab*—a 1943 case—"[t]he cause of action asserted by the plaintiff involves the question of unfair competition and common law trade-mark infringement and is *controlled by the law of the State of Kentucky.*" 53 F.Supp. at 276 (emphasis added). As such, the court's discussion in *Louisville Taxicab* is of little assistance to this court in adjudicating plaintiff's federal and California state law claims for trademark infringement and unfair competition.

the term is arbitrary, and as such, is inherently distinctive.

## B. Unfair Competition, False Advertising and Intentional Interference with Prospective Business Advantage

■ Citing to *Genesee Brewing Co v. Stroh Brewing Co.*, a Second Circuit case, plaintiff contends that despite the court's finding that the term "yellow cab" is not entitled to trademark protection, the court can nevertheless find for plaintiff on its unfair competition claims. 124 F.3d 137 (2d Cir.1997). However, the Ninth Circuit has stated that "[t]his Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir.1994); *see Japan Telecom*, 287 F.3d at 875 (concluding that plaintiff's "California unfair competition claim fails because its related Lanham Act claims fail" in action involving allegations of both federal and state law trademark infringement and unfair competition). Thus, because plaintiff's trademark infringement claim under the Lanham Act fails, its unfair competition claims—under both federal [7] and state law—also fail. *Japan Telecom*, 287 F.3d at 875.

Plaintiff further asserts that its claims for false advertising and intentional interference with prospective business advantage can survive despite the court's determination that its claims for trademark infringement and unfair competition fail.

However, a review of plaintiff's complaint reveals that both of these claims are predicated on defendant's alleged wrongful use of the protectable mark "yellow cab." Because this court finds that "yellow cab" is not entitled to trademark protection, plaintiff's claims for false advertising and intentional interference with prospective business advantage must also fail.

## C. Attorney's Fees [8]

■ Finally, defendant seeks an award of attorney's fees pursuant to 15 U.S.C. § 1117(a), arguing that the present case is "a mirror" of *Ale House Management, Inc. v. Raleigh Ale House, Inc.*, a Fourth Circuit case awarding attorney's fees to a successful defendant. 205 F.3d 137 (4th Cir.2000). However, unlike *Ale House*, where the plaintiff had alleged erroneous facts and withdrew a federal claim after defendant pointed out its inapplicability, the court does not find the facts of this case to be so exceptional as to require a grant of attorney's fees to defendant. Although plaintiff's evidence in support of its case is deficient, no evidence has been offered by defendant that would support a finding that there has been some economic coercion of defendant or objective unreasonableness of the legal and factual issues presented. *Id.* at 144. Accordingly, defendant's request for attorney's fees is denied.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is

---

**7.** In *Japan Telecom*, the Ninth Circuit held that because the plaintiff's trade name was not protectable, its Lanham Act claims for trade name infringement and unfair competition failed. 287 F.3d at 875.

**8.** Although defendant conclusively states that it is entitled to all costs as a prevailing party pursuant to 15 U.S.C. § 1117(a), the court notes that the statute by its plain language provides only that "the *plaintiff* shall be entitled ... to recover ... the costs of the action." 15 U.S.C. § 1117(a) (emphasis added). Thus, it appears that an award of costs to defendant is not provided for by the terms of the statute.

DENIED, and defendants' motion for summary judgment is GRANTED. The parties are to bear their own fees. The Clerk is instructed to close this file.

IT IS SO ORDERED.